UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JUNIPER NETWORKS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>SSL SERVICES, LLC, a Maryland limited liability company,<br><br>        Defendant. | Case No:  C  08-5758 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket 38 |

Plaintiff Juniper Networks, Inc. ("Juniper") filed the instant declaratory relief action seeking a determination that it has not infringed nine patents owned by Defendant SSL Services LLC ("SSL").  The parties are presently before the Court on SSL's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Transfer the Case to Maryland.  Having read and considered the papers filed in connection with this matter, and being fully informed, the Court GRANTS the motion to dismiss for the reasons set forth below.  Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant motion without oral argument.

I.      **BACKGROUND**

A.      OVERVIEW

Plaintiff Juniper is a computer networking company that sells internet protocol products. The company was incorporated in Delaware and is based in Sunnyvale, California.  (Coonan Decl. ¶ 1.)  Defendant SSL is a limited liability company formed under the laws of Maryland, which also is its principal place of business.  (Ronaldi Decl. ¶¶ 1-3.)  SSL is owned by eight members, including Jeff Ronaldi ("Ronaldi"), SSL's Managing Director.  (Id. ¶ 4.)  None of SSL's members reside or do business on behalf of SSL in California nor does SSL have any offices or facilities in this state.  (Id.)

SSL owns a portfolio of nine patents issued by the United States Patent and Trademark Office that relate to virtual private networks ("VPN"), which are at issue in this lawsuit.  (Id. ¶ 5.)  These patents originally were issued to V-One Corporation ("V-One"), a Maryland-based company.  (Id.)  After V-One declared bankruptcy, the patents were acquired by AEP Networks, Inc. ("AEP"), a Delaware corporation.  (Id. ¶ 6.)  In 2005, AEP sold the patents to SSL as part of a transaction that included a provision for a "grant back" to AEP of a non-exclusive license to use the patents-in-suit.

## B.   THE CITRIX LAWSUIT

Subsequent to acquiring the patents from AEP, SSL filed a patent infringement action against Citrix Systems, Inc. ("Citrix") and Citrix Online, LLC ("Citrix Online") in the Eastern District of Texas on April 11, 2008.  (Pl.'s Request for Jud. Notice ("RJN") Ex. B; Ronaldi Decl. ¶ 8.)  Citrix is a Delaware corporation with its principal place of business allegedly in Florida. (Pl.'s RJN Ex. H ¶ 9.)  Citrix Online is alleged to be a limited liability company organized under Delaware law, with its principal place of business in California.  (Id. ¶ 9.)  In that action, SSL accuses the Citrix entities of having infringed upon three of its patents, U.S. Patent Nos. 6,061,796, 6,158,011 and 6,907,530, which also are in dispute in this case.  (Id. ¶¶ 2-3.)  The lawsuit remains pending.  (Id. Ex. A at 16.)

## C.   JUNIPER AND SSL'S DISCUSSIONS

Separate and apart from the Citrix litigation, in July 2008, Scott Coonan ("Coonan"), Director of IP Litigation for Juniper, met with two representatives of Juridica Investments ("Juridica") in New York to discuss a possible joint venture unrelated to SSL.  (Coonan Decl. ¶ 9.) Also present at the meeting was Ronaldi, albeit in his capacity as a consultant to Juridica.  (Id.) Though the meeting did not pertain to SSL, Coonan and Ronaldi began discussing the possibility of Juniper obtaining a license from SSL for the patents-in-suit.  (Ronaldi Decl. ¶ 10.)  Coonan claims that at the conclusion of the meeting, Ronaldi handed him a copy of SSL's pending complaint filed in the Citrix action.  (Coonan Decl. ¶ 3.)  Coonan claims that based on Ronaldi's unspecified "conduct at that meeting" and his decision to provide a copy of the Citrix complaint, SSL would sue Juniper if it failed to reach an agreement with SSL on the sale or license of the patents.

1  (Coonan Decl. ¶ 3.)  Ronaldi denies that he provided a copy of the Citrix complaint to Coonan.

2  (Ronaldi Decl. ¶ 11.)

3        On July 23, 2008, Ronaldi sent Coonan an email "to follow up … on the SSL portfolio

4  [they] talked about July 11."  (Ronaldi Decl. Ex. B at 2.)  Ronaldi and Coonan exchanged several

5  emails, ostensibly to schedule a conference call to further discuss a potential licensing

6  arrangement.  (Id. at 1-2.)  On August 11, 2008, Ronaldi followed up with Coonan and indicated

7  that he would transmit a non-disclosure agreement ("NDA") to him.  (Id. ¶ 12 and Ex. B; Coonan

8  Decl. ¶ 5.)  On August 15, 2008, Ronaldi emailed a proposed NDA to Juniper. (Coonan Decl. ¶ 6.)

9  Both individuals apparently exchanged emails in an attempt "to set up a phone call to discuss the

10  draft NDA," but no such conference apparently occurred.  (Id.; Ronaldi Decl. ¶¶ 12-13.)  Also

11  during the July-August 2008 time period, Coonan and Ronaldi engaged in an unspecified number

12  of telephone conversations on unspecified dates regarding a possible licensing agreement for the

13  patents-in-suit.   (Coonan Decl. ¶ 7; Ronaldi Decl. ¶ 14.)

14        On November 24, 2008, Ronaldi emailed Coonan regarding the patents-in-suit.  (Coonan

15  Decl. ¶ 8; Ronaldi Decl. ¶ 15.)  According to Coonan, Ronaldi stated that he and SSL's counsel

16  would be in Northern California in early December, and would like to meet at that time at Juniper's

17  offices in Sunnyvale.  (Coonan Decl. ¶ 8.)  Coonan responded that he was unavailable, and instead

18  proposed meeting in January 2009.  (Id.)  Two days later on November 26, 2008, Ronaldi proposed

19  alternative dates in December 2008 and January 2009, and also included a revised, draft NDA.

20  (Id.)  However, the meeting never transpired and the NDA was never signed.  (Id.; Ronaldi Decl.

21  ¶ 10.)

22       **D.**     **PROCEDURAL SUMMARY**

23        On December 24, 2008, Juniper filed a Complaint for Declaratory Judgment against SSL

24  seeking a declaration of non-infringement as nine patents-in-suit held by SSL.[1]  In response to the

25  Complaint, SSL filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or

26  alternatively to transfer venue to Maryland.  Juniper then filed a First Amended Complaint, thereby

27  _____

28       [1] SSL owns U.S Patent Nos.: 5,590,197; 5,602,918; 5,694,471; 5,784,463; 6,061,796; 6,084,969; 6,158,011; 6,246,771; and 6,907,530.

1    rendering the motion to dismiss moot.  However, SSL has renewed its motion to dismiss or transfer

2    venue, which has been fully briefed by the parties.[2]

3    ## II.    LEGAL STANDARD

4         Rule 12(b)(2) authorizes a defendant to challenge a complaint "for lack of jurisdiction over

5    the person."  In a suit for declaratory judgment of non-infringement, Federal Circuit law is applied

6    to determine whether the district court has personal jurisdiction over an out-of-state corporation.

7    Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) ("Avocent").  As

8    the party seeking to invoke the district court's jurisdiction, the burden of demonstrating personal

9    jurisdiction is on the plaintiff.  See Pieczenik v. Dyax Corp., 265 F.3d 1329, 1333 (Fed. Cir. 2001).

10        "Determining whether personal jurisdiction exists over an out-of-state defendant involves

11   two inquiries: whether a forum state's long-arm statute permits service of process, and whether the

12   assertion of personal jurisdiction would violate due process."  Avocent, 552 F.3d at 1329 (quoting

13   Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).  California's jurisdictional statute

14   is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state

15   law and federal due process standards merge into one analysis—"whether jurisdiction comports

16   with due process."  Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  The exercise

17   of jurisdiction over non-resident defendants violates due process unless those defendants have

18   "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend

19   traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S.

20   310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant

21   purposefully avails itself of the privilege of conducting activities within the forum State, thus

22   invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

23

24   _____

25        [2] After Juniper filed its opposition to SSL's motion to dismiss, Juniper filed a Motion for
     Jurisdictional Discovery, which the Court referred to Magistrate Judge Joseph Spero for
     determination.  Judge Spero ruled that Juniper could "take a Rule 30(b)(6) deposition of a

26   representative of the Defendant, on the subject of what business, if any, Defendant has conducted
     in California, including what trips its representatives have taken into the state."  (Docket 60 at 1.)

27   Juniper deposed Ronaldi on October 28, 2009.  (Hayes Reply Decl. Exs. A, B.)  However,
     following the conclusion of the deposition, Juniper did not seek to amend or supplement its

28   opposition.

**III.    DISCUSSION**

    **A.    SPECIFIC JURISDICTION**

Personal jurisdiction may be either general or specific.  General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even if the cause of action has no relation to those contacts.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over the defendant if the cause of action "arises out of" or "relates to" the defendant's in-state activity.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985).  In a declaratory judgment action for non infringement of a patent, such a claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit."  Avocent, 552 F.3d at 1332.  As such, the court looks to "whether:  (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair."  Id.  Where the plaintiff satisfies its burden with respect to the first two prongs, the burden shifts to the defendant to demonstrate "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361-62 (Fed. Cir. 2006).

Juniper argues that SSL purposefully directed its activities towards California by virtue of having "targeted and sued California-based Citrix Online (and its affiliate Citrix Systems)" for patent infringement based on three of the same patents at issue in this case.  (Pl.'s Opp'n at 7.)  Though not raised by SSL, the Court notes, as an initial matter, that Juniper's assertions are factually unsupported.  The only "proof" that one of the Citrix entities is "California-based" is set forth in the pleadings filed in the pending Texas action.  (See Pl.'s RJN Ex. H.)  However, it is well settled that allegations in pleadings are not evidence.  While the Court may take judicial notice that SSL filed an action against Citrix Online, it is impermissible to infer from those pleadings that Citrix Online is indeed "based" in or is a resident of California.  See M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) ("a court may not take judicial notice of

1  proceedings or records in another cause so as to supply, without formal introduction of evidence,

2  facts essential to support a contention in a cause then before it.").

3        Even if Juniper had met its burden of presenting admissible evidence to support its

4  argument, Juniper ignores that SSL's patent enforcement activity took place in Texas, not

5  California.  In <u>Avocent</u>, the Federal Circuit held that sending cease and desist letters to an alleged

6  infringer within the forum, standing alone, is insufficient to establish personal jurisdiction. 552

7  F.3d at 1333.  Rather, the court observed that the Federal Circuit has "consistently required the

8  defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the

9  validity of the relevant patents." <u>Id.</u> at 1334.  "Examples of these 'other activities' include

10  initiating judicial or extra-judicial patent enforcement *within the forum*, or entering into an

11  exclusive license agreement or other undertaking which imposes enforcement obligations with a

12  party residing or regularly doing business *in the forum*." <u>Id.</u> (emphasis added).

13        Here, the enforcement activity involving the Citrix entities transpired in Texas, not

14  California.  Tellingly, Juniper cites no authority to support its novel argument that the act of filing

15  a lawsuit against an alleged California resident—*in a Texas district court*—is sufficient to make a

16  prima facie showing that it has purposefully availed "itself of the privilege of conducting activities

17  within the forum State, thus invoking the benefits and protections of its laws." <u>Avocent</u>, 552 F.3d

18  at 1329 (internal quotation and citation omitted).  Nor does such an argument make any logical

19  sense.  Under Juniper's theory of personal jurisdiction, a defendant would automatically be subject

20  to personal jurisdiction in a forum where it previously sued an entity that happened to conduct

21  business in that particular state, even where the lawsuit was filed in an entirely different state.

22        Next, Juniper argues that SSL's legal action against the Citrix entities, when considered

23  with the alleged "series of demand, or cease and desist, letters relating to the SSL Patents," is

24  sufficient to demonstrate the presence of personal jurisdiction.  (Pl.'s Opp'n at 9.)  The Court

25  disagrees.  As discussed, SSL's Texas lawsuit against the Citrix entities does not qualify as the type

26  of "other activities" within the meaning of <u>Avocent</u>.  That aside, Juniper has failed to present any

27

28

of the alleged "demand" or "cease and desist" letters to the Court.[3]  The only documents presented are those submitted *by SSL*, which consists of an email chain following the parties' initial discussion regarding the patents-in-suit during an earlier meeting in New York.  (See Ronaldi Decl. Ex. B.)  The emails, while perhaps suggesting that the parties unsuccessfully attempted to schedule a further discussion to follow up on their meeting in *New York*, hardly constitute the "series of demand, or cease and desist, letters" claimed by Juniper.

At bottom, the Court finds that Juniper has failed to carry its burden of showing that SSL purposefully directed its activities at residents of the forum or that the claim at issue in this action arises out of or relates to those activities.  At most, the record demonstrates that the parties had an initial discussion *in New York* regarding the patents-in-suit, followed by unsuccessful efforts via email and telephone to schedule a follow up conversation or meeting to discuss the matter further. No further meeting took place in California or anywhere else.  Juniper also has failed to show any "other activities" *within* California that would otherwise be sufficient to demonstrate personal jurisdiction over SSL.[4]

---

[3] Juniper also attempts to make much of alleged telephone discussions between Coonan and Ronaldi in which they discussed whether Juniper's products practiced SSL's patents and SSL's counsel's opinion that Juniper was infringing the patents-in-suit. (Pl.'s Opp'n at 9 n.3.)  Ronaldi recalls only one such conversation, which took place while Coonan "was on vacation on the East Coast."  (Ronaldi Decl. ¶ 14.)  For its part, Juniper does not specify the number of such conversations or when or where they occurred. (Coonan Decl. ¶ 7.)  However, Coonan acknowledges that one of those calls transpired while he was in Cape Cod, Massachusetts, and another may have taken place while he was in New York.  (Id.)  The Court finds this evidence is too vague to support Juniper's claim that SSL engaged in patent enforcement activity directed against Juniper.  In any event, as discussed, such alleged activity is insufficient to establish personal jurisdiction over a patentee.  Avocent, 552 F.3d at 1333.

[4] In light of the ruling on the motion to dismiss, the Court does not reach SSL's alternative motion to transfer venue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.     CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Defendant SSL's motion to dismiss for lack of personal jurisdiction is GRANTED.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  November 13, 2009

SAUNDRA BROWN ARMSTRONG
United States District Judge